# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

JOSHUA ANTHONY WYNN,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security Administration,

    Defendant.

Case No. 15-CV-375-CVE-FHM

## REPORT AND RECOMMENDATION

Plaintiff, Joshua Anthony Wynn, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's July 2, 2012, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") John W, Belcher was held October 23, 2013. By decision dated December 18, 2013, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on May 4, 2015. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 28 years old on the amended alleged onset of disability and 30 at the time of the ALJ's denial decision  He has a high school education and formerly worked as a small product assembler and store laborer. He claims to have been unable to work since December 1, 2011 as a result of seizure disorder, hyperplexia,[2] and a panic disorder.

## The ALJ's Decision

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.867(c), with the additional limitations of taking seizure precautions such as avoiding hazards, fast machinery, unprotected heights, driving, pools of water, and other similar hazards. He can have superficial contact with co-workers, supervisors, and the general public. [R. 22]. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff can return to his past relevant work as a small products assembler and a store laborer with these

---

[2] Hyperplexia, is also known as "stiff man syndrome," or "stiff limb syndrome." According to Plaintiff's treating physician it consists of sudden stiffening of muscles brought on by some sort of startle reaction or unknown reasons, but results in muscle stiffening, loss of control, and sometimes falling. [R. 338].

limitations. [R. 27]. Alternatively, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 27-28]. The case was thus decided at step four of the five-step evaluative sequence for determining whether a claimant is disabled with an alternative step five finding. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### Plaintiff's Allegations

Plaintiff asserts that: the ALJ erred in assessing his credibility; the ALJ erred in rejecting the opinions of Plaintiff's primary treating physician, Dr. Ramsey; the ALJ failed to develop the record; and the ALJ's step four determination is legally flawed.

### Analysis

### Credibility Analysis

"[C]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir.2010) (internal quotation marks omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted). Regarding Plaintiff's credibility, the ALJ noted: the sub-therapeutic medication levels as suggesting Plaintiff was not entirely compliant with his medications; Plaintiff had a sporadic work history; the record contains clear evidence Plaintiff has consciously attempted to portray limitations that are not actually present (Plaintiff claimed to use a cane while examining physicians observed normal gait). [R. 26]. Further, the ALJ noted a host of normal examination findings, including neurological functioning and the lack of objective medical

evidence to support his allegations. [R. 23-25]. Plaintiff offers arguments against the factors cited by the ALJ in support of his credibility finding. Those arguments are viewed as an invitation to engage in impermissible reweighing of the evidence. As the Tenth Circuit has instructed, the court must decline that invitation. *See Rabon v. Astrue*, 464 Fed. Appx. 732, 735-36 (10th Cir. 2012)(citing *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)).

The undersigned finds that the ALJ set forth the specific evidence he relied upon, applied the correct legal standards in evaluating Plaintiff's subjective allegations, and his determination on this matter is supported by substantial evidence in the record.

### Treating Physician Opinion

The record contains the treatment notes of Terroll Ramsey, M.D., Plaintiff's treating physician. Dr. Ramsey completed a Medical Source Statement-Physical dated September 28, 2010 wherein, among other things, he opined that Plaintiff's condition constantly interfered with his ability to concentrate, he was incapable of tolerating any stress, he can only walk one block without rest, he can only sit twenty minutes at a time, stand ten minutes at a time, can sit less than a total of two hours per day, and can stand/walk less than a total of two hours per day. [R. 288-293]. The same day Dr. Ramsey completed a Seizures RFC Questionnaire where he described the nature of Plaintiff's seizures, and stated they occur 3 to 4 times per month. [R. 334-337]. The record also contains a letter from Dr. Ramsey dated September 30, 2013, where he describes Plaintiff's condition and states his opinion that Plaintiff is totally and permanently disabled based on suffering fatigue after his seizures and stiffening episodes and drowsiness from his medication.

According to Dr. Ramsey, Plaintiff has 3 to 4 seizures per month and at least one episode of stiffening per month. [R. 338].

In the denial decision the ALJ accurately outlined Dr. Ramsey's treatment notes and opinions and stated he gave Dr. Ramsey's opinions little weight as they are inconsistent with the consultative examinations and inconsistent with his own treatment notes. [R. 23-24]. Plaintiff argues that the ALJ erred in giving Dr. Ramsey's opinions little weight. Plaintiff states that as a treating physician, Dr. Ramsey's opinions are entitled to more weight than the consultative examiner's opinions and the ALJ's conclusion that Dr. Ramsey's opinions are inconsistent with his treatment notes does not identify the inconsistencies. In a footnote, Plaintiff asserts that the ALJ failed to consider the "statutory"[3] factors, and did not give good reasons for rejecting Dr. Ramsey's opinion. [Dkt. 12, p. 8 n.4]. Therefore, according to Plaintiff, the court is deprived of meaningful review and the case must be remanded. [Dkt. 12, pp. 7-8].

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir.2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still

---

[3] The so-called treating physician rule and the factors for weighing opinions are established by the Commissioner's Regulations, not by statute. *See* 20 C.F.R. §§ 404.1527, 416.927.

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* (quotation omitted).  Those factors are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1300-01 (quotation omitted).  After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion.  20 C.F.R. § 404.1527(d)(2). "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."  *Watkins,* 350 F.3d at 1301 (quotations omitted).

There is no merit to Plaintiff's contention that the ALJ did not consider the factors set out in the Commissioner's regulations for weighing opinions.  Although the ALJ did not set out his analysis factor-by-factor, the decision demonstrates that the appropriate factors were considered.  The ALJ noted that on September 28, 2010 Dr. Ramsey reported he treated Plaintiff for more than a year (length of treatment), the ALJ accurately summarized Dr. Ramsey's treatment records by date (frequency of examination), and he noted treatment consisted of medication management (kind of treatment provided).  The ALJ found that Dr. Ramsey's opinions were inconsistent with the opinions of the consultative examiners (one of whom was a board certified neurologist), and were inconsistent with this own treatment notes (consistency with record as a whole).  The ALJ does not note Dr. Ramsey's specialty, but one is not demonstrated in the record, and Plaintiff does not

6

specify Dr. Ramsey's specialty either. The undersigned finds that the ALJ considered appropriate factors in weighing Dr. Ramsey's opinion.

The ALJ noted that on April 4, 2010, Plaintiff reported to Dr. Ramsey that his medication was working well. The neurological examination on that date was normal. The undersigned notes there were no complaints of medication side effects. [R. 303-304]. On August 9, 2010, Plaintiff presented to Dr. Ramsey with disability paperwork. The treatment records on that day note no complaints of medication side effects, that Plaintiff has a known seizure disorder with seizures occurring every 2-3 months, and that all findings on examination were normal. [R. 301-302]. On the Report of Examination for Seizure Disorder Dr. Ramsey reported Plaintiff has seizures "every other month" [R. 294]. The treatment records reflect no complaints of medication side effects, but Dr. Ramsey reported Plaintiff's medications make him feel tired and drowsy requiring naps daily. [R. 294].

On February 10, 2012, Plaintiff presented to Dr. Ramsey to discuss his disability and anxiety. Plaintiff reported 3-4 seizures per week and at least 10 episodes of stiffening in the last month. Dr. Ramsey noted mostly normal findings on examination but stated "[h]e is not able to be employed due to his neurological and emotional disease states as documented by previous exams and statements." [297]. On August 6, 2012, Plaintiff presented to Dr. Ramsey for a follow up complaint of fatigue and dizziness caused by medication. [R. 343]. Examination findings at the time were normal. [R. 343-344]. Plaintiff's medication level was tested and was sub-therapeutic. [R. 345].

On May 19, 2013, Dr. Ramsey's notes report no complaints of side effects and he recorded normal examination findings. [R. 341-342]. By letter dated September 30, 2013, Dr. Ramsey opined that Plaintiff is "totally and permanently disabled based on his suffering

7

Case 4:15-cv-00375-CVE-FHM   Document 17 Filed in USDC ND/OK on 06/28/16   Page 8 of 12

fatigue after his seizures and stiffening episodes and drowsiness from his medication. He requires frequent rest breaks and more than average sleep." [R. 338]. In the letter Dr. Ramsey reported Plaintiff has 3-4 seizures a month and at least 1 episode of stiffening per month. *Id.*

The undersigned finds that the ALJ's conclusion that Dr. Ramsey's opinions are inconsistent with his own treatment notes is supported by substantial evidence.

Plaintiff is critical of the ALJ for mentioning the lab reports in the record that reflect Plaintiff had sub therapeutic blood levels of his seizure medication. In discussing the Listings of Impairments for epilepsy, the ALJ discussed *Social Security Ruling* (SSR) 87-6, 1987 WL 109184. [R. 20]. That document addresses evaluation of epilepsy. It advises that as a result of modern treatment, most epileptic seizures are controllable and individuals who receive appropriate treatment are able to work, while only a small percentage who are under appropriate treatment are precluded from working. The importance of having a record of therapeutic blood levels is discussed. SSR 87-6 advises that the most predominant reason for sub therapeutic blood levels is not taking medication as prescribed. Further, any finding that low blood levels are caused by idiosyncracy in absorption must be based on descriptive evidence. In view of the content of SSR 87-6, the ALJ cannot be criticized for focusing on the sub therapeutic blood levels.

### Development of the Record

Sherman Lawton, MD., the consultative neurologist who examined Plaintiff recorded mostly normal medical findings on examination, including normal gait. [R. 332]. He stated he "cannot justify a diagnosis of pathological hyperreflexia or stiff man syndrome or anything of the sort." *Id.* He also stated he would need further evidence as to whether

Plaintiff has a true seizure disorder, including EEG studies. Dr. Lawton stated it would be incredibly unusual to have four seizures per week and have a normal EEG. *Id.* The ALJ stated he gave Dr. Lawton's opinion great weight as it is consistent with the other medical evidence of record. [R. 25]. Plaintiff argues that the ALJ's failure to order EEG studies constitutes a failure in his duty to develop the record. The undersigned finds that the ALJ did not fail to develop the record. The ALJ did not doubt the diagnosis of epilepsy or that it had an effect on Plaintiff's ability to work. The ALJ appropriately focused on the functional effects of that condition.

The record contains the opinions of state agency Disability Determination Service (DDS) consultant Karl K. Boatman, MD, who reviewed Plaintiff's medical records and opined that an RFC with seizure precautions seems appropriate. [R. 81, 329]. In summarizing the medical record, Dr. Boatman noted Dr. Lawton's statement that an EEG was needed for a diagnosis. *Id.* The ALJ gave Dr. B's opinion "great weight". [R. 26]. Plaintiff argues that Dr. Boatman also opined that an EEG was needed. This is plainly not the case, as Dr. B was merely recounting the contents of Dr. Lawton's report.

<u>Step Four Determination</u>

At step four of the evaluative sequence, the ALJ considers whether the claimant can return to any past relevant work. The ALJ is required to make specific step four findings in three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical [and mental] limitations," which is the RFC finding. *Id.* In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." *Id.* at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability

to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* These findings are to be made on the record by the ALJ. *Id.* at 1025; *see also*, SSR 82-62, 1982 WL 31386, at * 4 ("decision must contain ... specific findings of fact" regarding each of the three phases).

The ALJ found that Plaintiff can return to his past relevant work as a small product assembler and store laborer.  [R. 27].  Plaintiff accurately points out that in making this finding, the ALJ failed to make specific findings about the demands of his past relevant work.  Aside from identifying the work, all the ALJ said about the past work is that it does not require performance of work related activities precluded by the Plaintiff's RFC. *Id.* That general finding does not provide the detail required at this step of the evaluation.  The undersigned finds, however, that the ALJ's omission is harmless because the ALJ made alternative step 5 findings that there are other jobs in the economy that Plaintiff could perform with his limitations.

The only challenge to the ALJ's step five finding appears in Plaintiff's reply brief. [Dkt. 16, p. 3].  Arguments raised for the first time in reply briefs are deemed waived. *U.S. v. Supreme Court of New Mexico,* — F.3d — (10th Cir. 2016), 2016 WL 3166830 at *9 n.7; *Jones v. Colvin,* —Fed.Appx. —, (10th Cir. 2016), 2016 WL 2946466 at *5.  In any event, Plaintiff's cursory reference to the step five finding does not identify any issue at step five. As a result, the undersigned finds that there is no challenge to the ALJ's alternate finding that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform.  This unchallenged alternate finding constitutes substantial evidence to support the ALJ's denial decision.  As a result, any step four error cannot, by itself, constitute the basis for a remand.

**Conclusion**

The undersigned United States Magistrate Judge finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before July 12, 2016.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 28th day of June, 2016.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE