UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JOSHUA ANTHONY WYNN,            )
                                )
         Plaintiff,             )
                                )
v.                              )    Case No. 15-CV-375-CVE-FHM
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner,            )
Social Security Administration, )
                                )
         Defendant.             )

**OPINION AND ORDER**

Now before the Court is the Report and Recommendation (Dkt. # 17) of the magistrate judge recommending that the Court affirm the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 18) to the Report and Recommendation, and defendant has filed a response (Dkt. # 19) to the objection.

**I.**

On July 2, 2012, plaintiff filed an application for disability benefits, and he alleged that he was disabled because he suffered from epilepsy and hyperexplexia.[1] Dkt. # 11, at 186. Plaintiff's application was initially denied and he sought reconsideration of that decision. Id. at 82. The denial of plaintiff's application was affirmed on reconsideration, and he requested a hearing before an administrative law judge (ALJ).

---

[1]  The medical records and the written decision refer to hyperplexia or hyperexplexia to describe one of plaintiff's impairments that is sometimes referred to as stiff man syndrome. The Court will refer to plaintiff's condition as hyperexplexia throughout this Opinion and Order.

A hearing was held before an ALJ on October 23, 2013, and plaintiff was represented by counsel at the hearing. Counsel advised the ALJ that plaintiff wanted to amend the date of onset of disability to December 1, 2011. Dkt. # 11, at 43. Plaintiff acknowledged that he smoked a pack of cigarettes per day. Id. at 46. He claimed that he suffered from fatigue and sore gums due the medication he was taking. Id. at 49. Plaintiff identified his primary disabilities as epilepsy, hyperexplexia, and panic attacks. He stated that he had grand mal seizures and he was sometimes aware when a seizure was occurring, and seizures can be dangerous if he is not able to lie down. Id. at 50-51. He claimed that he had three to four seizures per month even when he was taking anti-seizure medication, and normally took a nap for five to eight hours after each seizure. Id. at 52-53. Flashing lights could trigger seizures. Id. at 54. Plaintiff suffers hyperexplexia and he frequently falls or loses his balance, and plaintiff sometimes walks with a cane to avoid falling. Id. at 56-57. He has falling episodes about once or twice a month and the episodes tend to be caused by anxiety. Id. at 58. Plaintiff claims that he has difficulties with speech and he suffers from memory loss, and his physical conditions cause him to suffer from anxiety. Id. at 60-62. Plaintiff's last employment before he sought disability benefits was as a cook at Kentucky Fried Chicken, and he quit after an incident in which he was severely burned when the lid blew off of a pressure cooker. Id. at 64-65. He had problems working with enough speed and staying focused, and he cannot drive a car and has to rely on other people for transportation. Id. at 66. He also stated that he had difficulty arriving at work on time, because he was frequently late to work if he was recovering from a seizure. Id. at 67. The ALJ called a vocational expert (VE) to testify and she testified that plaintiff had formerly worked as a cashier/checker, small products assembler, wire harness assembler, store laborer, hand packager, and sandwich maker. Id. at 71. In terms of past relevant work, the ALJ stated that he

would consider only the small products assembler and store laborer jobs because plaintiff held many of the jobs for such a short period of time. Id. at 72. The ALJ asked the VE to consider a hypothetical 29 year old claimant and the VE found that the hypothetical claimant could perform plaintiff's past relevant work and other jobs. Id. at 73. If the VE assumed that plaintiff's testimony was entirely credible, the VE testified that there would be no jobs in the regional or national economies that he could perform. Id. at 74.

On December 18, 2013, the ALJ issued a written decision denying plaintiff's claim for disability benefits. The ALJ found that plaintiff had the severe impairments of seizure disorder, hyperexplexia, and panic disorder, but none of these impairments or combination of impairments met or medically exceeded any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 23. Plaintiff had mild restrictions in activities of daily living, and he reported that he was able to take care of himself, care for pets, and do household chores. Id. at 25. Plaintiff had moderate difficulties with social functioning, but he was able to maintain friendships with others and he got along well with his family. Id. He also had mild difficulties with concentration, persistence or pace and he reported difficulty with understanding instructions, but can listen to and follow rules. Id. The ALJ found that plaintiff had the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except in that he can lift and/or carry and push and/or pull no more than 25 pounds frequently and 50 pounds occasionally; he stand or walk six to eight hours in an eight-hour workday; and can sit six to eight hours in an 8-hour workday. He should take seizure precautions such as avoiding hazards, fast machinery, unprotected heights, driving, pools of water, and other similar hazards. He can have superficial contact with co-workers, supervisors, and the general public.

Id. at 26. The ALJ considered a third party report from Richard Anderson, a friend and roommate of the plaintiff, and Anderson reported plaintiff suffered from hyperexplexia and seizure disorder

3

and was unable to work. Id. However, Anderson stated that plaintiff could perform household chores, pay bills, and manage a savings account, but plaintiff spent most of his time watching television. Id. The ALJ also considered a third party report from plaintiff's father, John Wynn, and he stated that plaintiff had a seizure disorder and he had observed many seizures. Id.

The ALJ found that the third party reports of Anderson and John Wynn were inconsistent with the objective medical evidence. Terrell Ramsey, M.D., treated plaintiff for seizures in April 2010, and he reported that plaintiff's medication was working well. Id. at 27. On September 28, 2010, plaintiff visited Dr. Ramsey and asked him to complete disability paperwork, and Dr. Ramsey opined that plaintiff would consistently experience severe symptoms from his seizure disorder and hyperexplexia to the extent that plaintiff would be unable to perform even simple tasks. Id. Dr. Ramsey completed an RFC questionnaire and reported that plaintiff had grand mal seizures with loss of conscience [sic] at least three to four times a month, and the seizures lasted about five or six minutes. Id. Plaintiff's blood tests showed that he had sub-therapeutic levels of anti-seizure medication, but Dr. Ramsey stated that plaintiff was compliant with taking his medication. Id. Dr. Ramsey opined that plaintiff "would not have any good days, only bad days," and he reported that plaintiff's medication would make him drowsy and would require plaintiff to take daily naps. Id. at 27-28. Plaintiff saw Dr. Ramsey in December 2011 and reported that he had a seizure two days before seeing Dr. Ramsey. Id. at 28. In August 2012, plaintiff told Dr. Ramsey that his seizures could be described as muscle tightness preceded by shortness of breath and nausea, and Dr. Ramsey observed that plaintiff's cranial nerves, sensation, gait, and muscle control were normal. Id. The ALJ found that Dr. Ramsey's opinions concerning the severity of plaintiff's symptoms were

4

inconsistent with his own treatment notes and with consultative examinations and gave his opinions little weight.

Dennis A. Rawlings, Ph.D., conducted a mental status examination of plaintiff on August 20, 2012, and Dr. Rawlings noticed that plaintiff appeared sedated due to his medication. Id. Plaintiff's motor activity, speaking, and walking were slow, and his facial expression was flat and unexpressive. Id. Plaintiff was cooperative during the examination and no malingering was suspected. Id. Dr. Rawlings found that plaintiff had an average IQ score and he had adequate attention span, memory, and ability to think logically. Id. Dr. Rawlings opined that plaintiff suffered from anxiety as a side effect of his medication and this impaired his emotional relatedness, and his diagnosis was panic disorder without agoraphobia and generalized anxiety disorder. Sherman B. Lawton, M.D., performed a neurological examination of plaintiff, and he observed no loss of primary sensory modality. Plaintiff's reflexes were "on the active side" but not abnormal. Id. Plaintiff came into the office using a cane, but he forgot about the cane on the way out and walked without it. Id. at 28-29. Dr. Lawton could not confirm a true seizure disorder without an EEG study, but he found no evidence that would justify a diagnosis of pathological hyperexplexia. Id. at 29.

In September 2013, Dr. Ramsey drafted a letter stating that plaintiff was totally and permanently disabled due to fatigue caused by seizures and drowsiness from his anti-seizure medication. Id. He further opined that plaintiff would require frequent breaks and more than average sleep. Id. He reported that plaintiff would need to be near a restroom and that plaintiff could not lift more than 20 pounds, but the ALJ found no medical evidence supporting these restrictions. Id. The ALJ found that plaintiff consistently had sub-therapeutic levels of medication

and this suggested that he was not complying with treatment, and his symptoms would likely be less severe if took his medication as prescribed. Id. at 30. The ALJ also noted that plaintiff had a sporadic work history and this raised a question "as to whether the claimant's continuing unemployment is actually due to medical impairments." Id. The ALJ gave great weight to a recommendation by Karl K. Boatman, M.D., that plaintiff would need seizure precautions as part of his RFC. Id.

The ALJ found that plaintiff could perform medium work with the restrictions noted in the RFC and that work performed at the medium level of exertion with these restrictions would not exacerbate plaintiff's symptoms. Id. The ALJ considered the testimony of the VE and found that plaintiff would be able to perform his past relevant work as a small product assembler and store laborer. Id. at 31. Plaintiff was 27 years old on the alleged date of onset of disability and he had a high school education, and the ALJ applied the Medical-Vocational Guidelines because plaintiff could perform all or substantially all of the exertional demands at the given level of exertion. Id. The ALJ made an alternative finding that plaintiff could not perform his past relevant work and that the Medical-Vocational Guidelines did not apply, and the found that there were jobs in sufficient numbers in the national or regional economies that plaintiff could perform. The ALJ found that plaintiff was not disabled and he denied plaintiff's application for disability benefits.

Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council found no basis to review the ALJ's decision. Id. at 5. Plaintiff filed this case seeking judicial review of the denial of his application for disability benefits.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

### III.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step four of the analysis but he also made alternative step five findings. Step four has three separate phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], *see* SSR 86-8, Soc. Sec. Rep. Serv., Rulings 1983-1991, 423, 427 (West 1992), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(e). In the final phase, the ALJ

7

> determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.

Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). If a claimant can perform his or her past relevant work, the claimant is not disabled and the ALJ is not required to continue to step five of the analysis. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of his past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**A.**

Plaintiff argues that the ALJ's credibility determination is unsupported or contradicted by the evidence and he asks the Court to remand the case for new credibility findings. Dkt. # 18, at 1-2. He claims that the ALJ erroneously concluded that plaintiff was non-compliant with taking his medication and that the ALJ improperly considered plaintiff's sporadic work history when discounting plaintiff's credibility. Defendant responds that plaintiff is asking the Court to reweigh the evidence and the Court should reject plaintiff's arguments concerning the ALJ's credibility findings. Dkt. # 19, at 2.

"Credibility determinations are peculiarly the province of the finder of fact," and such determinations are not to be upset "when supported by substantial evidence." Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence." Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Factors an ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hutson, 838 F.2d at 1132. An ALJ must look beyond objective medical evidence in evaluating claims of disabling pain. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987). An ALJ must give specific reasons for his findings and such findings must be closely linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995). However, an ALJ does not need to provide a "formalistic factor-by-factor review of the evidence"; an ALJ needs only to "set[] forth the specific

evidence he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Common sense should guide the review of an ALJ's credibility determination and technical perfection is not required. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

Plaintiff argues that the ALJ erred when he found plaintiff less credible due to his alleged failure to take his prescribed medication based on evidence that plaintiff's level of Dilantin was "subtherapeutic." Dkt. # 18, at 2. The ALJ correctly noted that plaintiff was taking subtherapeutic levels of Dilantin and there are notes from Dr. Ramsey in October 2009 showing that he prescribed a subtherapeutic level of medication. Dkt. # 11, at 309-12. In April, August and September 2010, plaintiff was not complaining of side effects from taking his medication and there is no explanation in the record as to why he was taking subtherapeutic levels of medication. Id. at 304-08. The ALJ did not entirely discount plaintiff's symptoms or find that he was not disabled due to his possible non-compliance with treatment, but the ALJ noted this issue in conjunction with the subjective nature of plaintiff's medical complaints when considering plaintiff's credibility. Id. at 29. Plaintiff claims that the ALJ failed to follow 20 C.F.R. § 404.1530 when making a finding that plaintiff was non-compliant with treatment. However, the ALJ did not deny plaintiff's claim for disability benefits solely because of his alleged non-compliance with treatment, and the ALJ could consider this issue as part of the credibility assessment without making the findings required by § 404.1530. Holbrook v. Colvin, 521 F. App'x 658, 663 n.5 (10th Cir. Mar. 21, 2013)[2]; Qualls v. Apfel, 206 F.3d

---

[2]   Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

10

1368, 1372 (10th Cir. 2000). The Court finds no error with the ALJ's consideration of evidence that plaintiff may have been taking inadequate levels of medication as part of the credibility analysis.

Plaintiff also argues that ALJ improperly considered plaintiff's sporadic work history and his use of a cane, and he claims that the ALJ failed to consider the side effects of plaintiff's medication when assessing plaintiff's credibility. The ALJ referenced plaintiff's work history prior to alleged date of onset of disability and stated that the sporadic work history "raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." Dkt. # 11, at 30. Plaintiff claims that his poor work history was due to paranoia and anxiety and this should not have been considered as a factor in the credibility analysis. Dkt. # 18, at 3. When viewed in the context of the totality of the ALJ's credibility findings, there is nothing improper about the ALJ's consideration of plaintiff's prior work history, because the statement was made in the context of the ALJ's analysis of the subjective nature of plaintiff's complaints and the lack of objective medical evidence supporting many of his complaints. As to plaintiff's use of a cane, Dr. Lawton noted that plaintiff's use of a cane was "interesting," because plaintiff walked into the office using a cane but he forgot the cane and he had a normal gait without the cane. Dkt. # 11, at 336. Dr. Lawson opined that a person regularly using a cane would not be likely to forget the cane and his observations suggest that plaintiff did not need a cane to walk. Id. The ALJ considered Dr. Lawson's statements in the context of the medical evidence that plaintiff walked with a normal gait and as evidence that plaintiff overstated the severity of his impairments. Id. at 30. Finally, plaintiff argues that the ALJ failed to consider the side effects of his medication as part of the credibility analysis. The ALJ considered Dr. Ramsey's treatment notes stating that plaintiff claimed to feel tired and drowsy because of his medication, but the ALJ also noted that plaintiff was taking

11

subtherapeutic levels of Dilantin. Id. at 28. In light of this inconsistency, the ALJ gave plaintiff's complaints concerning the side effects of medication less weight and the ALJ's credibility finding in this regard is tied to the administrative record. The Court has considered each of plaintiff's arguments as to the ALJ's credibility analysis and finds no basis to reverse the ALJ's decision.

### B.

Plaintiff argues that the ALJ did not give sufficient weight to the opinions of his treating physician, Dr. Ramsey, and he argues that boilerplate language used by the ALJ was insufficient to identify the alleged inconsistencies between the medical evidence and Dr. Ramsey's opinions. The magistrate judge has recommended that the ALJ considered the relevant factors and that the ALJ's decision to afford less weight to the opinions of Dr. Ramsey is supported by substantial evidence.

A treating physician's opinion is generally entitled to more weight than medical opinion evidence from non-treating sources. Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004). To determine the weight afforded to treating physician evidence, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

Id. Even if a treating physician's opinion is not entitled to controlling weight, treating physician evidence is still entitled to deference and the ALJ must consider the following six factors to determine what weight the evidence should be given:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon

>    which an opinion is rendered; and (6) other factors brought to the ALJ's attention
>    which tend to support or contradict the opinion.

Id. The Tenth Circuit has been clear that an ALJ must "'give good reasons in [the] notice of determination or decision'" for the weight assigned to a treating physician's opinion and the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion . . . ." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). Remand is required if a court reviewing an ALJ's decision cannot determine what weight was assigned to a treating physician's opinion evidence. Id. at 1301.

The Court has reviewed plaintiff's opening brief (Dkt. # 12) and he makes very general arguments as to the adequacy of the ALJ's evaluation of Dr. Ramsey's opinions. Even though plaintiff's arguments were not specific as to the alleged error, the magistrate judge thoroughly reviewed the administrative record and examined the ALJ's decision and the medical evidence. The Court has independently reviewed the ALJ's written decision and the administrative record, and finds that the ALJ considered the relevant factors when deciding to give Dr. Ramsey's opinions less weight. The ALJ summarized the treatment notes of each visit plaintiff made to Dr. Ramsey, and the ALJ clearly set forth the length and frequency of the treatment and nature of plaintiff's relationship with Dr. Ramsey. Dkt. # 11, at 27-29. However, the ALJ compared Dr. Ramsey's opinions to the objective medical evidence and opinions of consultative examiners, and concluded that plaintiff's subjective complaints appeared to be exaggerated. This included evidence that plaintiff forgot his cane in a doctor's office and Dr. Lawton observed that plaintiff had a normal gait without using a cane. Id. at 29. Plaintiff has not shown that Dr. Ramsey is a specialist in the relevant field, but the consultative examiner, Dr. Lawton, is a board certified neurologist. Id. at 335. Contrary to plaintiff's assertion, the ALJ did not simply recite boilerplate language and he gave

reduced deference to Dr. Ramsey's opinions due to Dr. Ramsey's heavy reliance on the subjective complaints of plaintiff that were not supported by other objective medical evidence. The Court finds that the ALJ conducted an adequate analysis of Dr. Ramsey's opinions and the ALJ's written decision contains the necessary findings under Langley for giving less deference to the opinion of a treating physician.

## C.

Plaintiff claims that the ALJ erred by failing to order further development of the administrative record, because the ALJ gave "great weight" to the opinions of Dr. Lawton and Dr. Boatman but both physicians believed that an EEG study was needed to fully assess plaintiff's functional limitations. The magistrate judge recommended that further development of the administrative record was unnecessary, because Dr. Boatman did not actually recommend further testing and the ALJ imposed functional limitations based on evidence that plaintiff had a seizure disorder. Dkt. # 17.

A hearing before the ALJ in a social security disability case is non-adversarial and the ALJ has a duty to develop the record. Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008). In cases when a claimant is represented by counsel, "'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.'" Branum v. Barnhart, 358 F.3d 1268, 1271 (10th Cir. 2004). Courts "will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits that the record is complete." Maes, 522 F.3d at 1097.

Dr. Lawton examined plaintiff on October 22, 2012 and he noted that plaintiff's treating physician had diagnosed plaintiff with hyperexplexia and seizure disorder. Dkt. # 11, at 335. However, Dr. Lawton did not find sufficient medical evidence to support a diagnosis of hyperexplexia, and he could not diagnose a seizure disorder without an EEG. Id. at 336. Dr. Lawton's findings were reviewed by Dr. Boatman, but Dr. Boatman did not independently recommend an EEG. The ALJ considered Dr. Lawton's opinion that he could not diagnose hyperexplexia and that an EEG would be needed to diagnose a true seizure disorder, and plaintiff claims that the ALJ was required to order an EEG in light of Dr. Lawton's opinion. The Court finds that the ALJ's failure to independently consider the issue of supplementation of the record is not a basis to remand the case for further proceedings. Plaintiff was represented by counsel at the hearing before the ALJ and counsel did not request supplementation of the record at that time. Even though the issue was not raised at the hearing, the ALJ's decision shows that at step two that "seizure disorder" was expressly identified as an impairment, and the ALJ considered this impairment when formulating the RFC. Dr. Lawton noted that a "true" seizure disorder could not be diagnosed without an EEG, but the ALJ found that plaintiff actually had a seizure disorder and additional testing of plaintiff would have no effect on the outcome of plaintiff's claim for disability benefits.

**D.**

Plaintiff argues that the ALJ failed to make the required findings at step four as to whether plaintiff could meet the mental and physical requirements of his past relevant work, and he claims that the case should be remanded to allow the ALJ to make these findings. Defendant responds that the ALJ made alternative step five findings that plaintiff has not challenged, and any error at step four does not require that the case be remanded.

15

At step four, the ALJ must engage in a three-part analysis to determine if plaintiff can perform his past relevant work with the physical and mental limitations contained in the RFC. The ALJ should initially "assess the nature and extent of [the claimant's] physical limitations and then determine the [claimant's] [RFC] for work activity on a regular and continuing basis." Winfrey, 92 F.3d at 1023. The ALJ must next make findings "regarding the physical and mental demands of the claimant's past relevant work." Id. at 1024. Finally, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Id. at 1023. The magistrate judge recommended that the ALJ failed to make the necessary findings at step four, because he did not make "specific findings about the demands of [plaintiff's] past relevant work." Dkt. # 17, at 10. The Court agrees with the magistrate judge's assessment of the ALJ's step four analysis. The ALJ simply relied on the testimony of the VE and concluded without analysis that plaintiff could perform his past relevant work as a small product assembler and store laborer. Dkt. # 11, at 31. This type of step four analysis has been expressly rejected by the Tenth Circuit Court of Appeals. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003) ("It is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the [VE], because in such cases, 'the remainder of the step four assessment takes place in the VE's head' and 'we are left with nothing to review'").

However, the Court also agrees with the magistrate judge's recommendation that this does not require remand for further proceedings, because the ALJ made alternative findings at step five and plaintiff has failed to challenge the alternative step five findings. The Tenth Circuit has observed that a plaintiff choosing the litigation strategy adopted by plaintiff takes the risk that any error at step four will be deemed harmless in light of the step five findings made by the ALJ.

16

Murrell v. Shalala, 43 F.3d 1388 (10th Cir. 1994). As to step five, plaintiff's objection to the report and recommendation could be construed to contain an argument that the ALJ's step five findings are unsupported due to the other alleged errors identified by plaintiff. Dkt. # 18, at 5. However, the Court has rejected plaintiff's other arguments and the ALJ's decision is not "fraught with legal error" as alleged by plaintiff. Id. The ALJ identified three jobs at step five that could be performed by a person with plaintiff's RFC, and plaintiff has made no specific argument that any of those jobs is inconsistent with plaintiff's RFC. The Court finds that any error at step four of the analysis is harmless based on the alternative step five findings made by the ALJ.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 17) is **accepted**, and the Commissioner's decision denying plaintiff's application for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 22nd day of August, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE